# EXHIBIT B

| | |
|---|---|
| **From:** | Lewis, Alan S. |
| **Sent:** | Friday, April 12, 2024 12:18 AM |
| **To:** | Laura Thompson |
| **Cc:** | Elissa Cohen; brian.leung@voxmedia.com |
| **Subject:** | RE: Article presented to NY Magazine for Publication by Freelance Reporter Sammy Sussman/ Our client - Liang Wang |

Laura,

As your reason for imposing an **unrealistic deadline of 11 am tomorrow** (14 hours from when you sent your email) for responses to a long narrative and set of questions, you rely on the statement that Mr. Sussman purportedly "reached out to you" [meaning me] "multiple times" - **but that is not correct**. He reached out to me **only once**, and I did not respond to the questions he posed **on that one occasion** for what, respectfully, should be a reason that is understandable to New York Magazine: as I have already detailed, the narrative and questions Sussman sent me objectively reflected that something was fundamentally amiss in his reporting. I gave **several** examples of this in my letter to Mr. Leung, just one of which was that Sussman **asked whether Mr. Wang testified** while professing to have obtained and read the arbitration decision. It is **impossible** that someone who had actually obtained the arbitration decision could genuinely maintain uncertainty about whether Mr. Wang testified. After I pointed out this concerning fact to New York Magazine (in my letter to Mr. Leung), which Ms. Cohen indicated in her letter to me that she has shared with you, you sent me an email that puzzlingly **continues** to ask this significant question whose answer **you would have to know**, if you actually possess the arbitration decision that your email represents that you have. I remain willing to help New York Magazine better understand the actual facts, to the extent that can be done without violating the confidentiality terms under which the arbitration took place, but the deadline you have imposed is unrealistic and unfair, particularly in combination with the fact that New York Magazine itself **never reached out to us**, and given that the narrative and set of questions that you sent tonight continue to make **many** significant false assumptions.

Another example of your incorrect and unexplained assumptions is reflected by the fact that most of your questions for Mr. Wang are about an incident that occurred in Vail, Colorado in 2010. These questions assume, **incorrectly**, that Mr. Wang was accused of misconduct by Cara Kizer (or the New York Philharmonic in relation to Kizer. **That is demonstrably false**, but yet, on the cusp of publication, New York Magazine has provided a narrative to me that fails to reflect that fact and instead assumes the opposite, by, for example, asking Mr. Wang to comment on "Kizer's allegation against you" – an allegation that does not exist.

In her letter, Ms. Cohen appears to make the same mistake of fact, stating that the " **events surrounding your client's firing** and rehiring by the New York Philharmonic . . . have been

the subject of investigation and newsworthy discussion and consideration **for over 10 years**." But the only "investigation" of any matter described in your email that was "over 10 years " ago was the Vail investigation, and **contrary to Ms. Cohen's incorrect belief**, **neither the Philharmonic nor Cara Kizer accused my client, Mr. Wang, of committing any misconduct in Vail**.   But the making of this statement – as late as tonight - reveals that New York Magazine is about to publish an article about Mr. Wang's firing and rehiring, without having an understanding of the actual events surrounding his firing and after his subsequent redemption – through a *very* thorough and meticulous arbitration hearing that provided a complete opportunity for **all** of the information to be aired and assessed by an independent arbitrator whose  peerless and sterling reputation is unequaled.

On this point, why does your email refer to the person who conducted the investigation as "independent" – given that the investigator was paid and instructed by the Philharmonic?  Why, in referring several times to the arbitration and arbitrator, do you NOT refer to the arbitration or arbitrator as independent, when the independence of the arbitrator is beyond question?  It seems evident, from this choice to apply the adjective "independent" to Barbara Jones, but not to the arbitrator, that you are using inconsistent standards for what constitutes "independent".

Respectfully, you should push the "pause" button on your article, which in its current form, as reflected by the narrative and questions you sent me, will contain many inaccuracies, some of which may do substantial damage to the reputation of Mr. Wang, just as he is beginning to repair the damage to his reputation caused by the false allegation that was made against him by the Philharmonic.  Your questions, unfortunately, reveal fundamental ignorance, and that New York Magazine is not currently able to publish an accurate article about Mr. Wang.

You might reach at least a somewhat better and more complete understanding of the actual facts if you provided a **meaningful opportunity to** comment on what you plan to say about Mr. Wang in your article.  A response to the questions you sent me, by 11 am tomorrow, is not such an opportunity.

Alan S. Lewis
Partner
Carter Ledyard & Milburn LLP
28 Liberty Street
New York, NY 10005
917.533.2524
lewis@clm.com  / www.clm.com

2