**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LIANG WANG**, | |
| **Plaintiff**, | |
| **v.** | Civil Action No. 1:24-cv-03987-AS |
| **SAMMY SUSSMAN; VOX MEDIA, LLC; NEW YORK MEDIA, LLC,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS**
**SAMMY SUSSMAN, VOX MEDIA, LLC, AND NEW YORK MEDIA LLC**
**TO DISMISS PLAINTIFF'S COMPLAINT**

Katherine M. Bolger
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:    (212) 489-8230
Facsimile:    (212) 489-8340

*Counsel for Defendants Sammy Sussman; Vox*
*Media, LLC; New York Media LLC*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTS ................................................................................................................... 2

    A.    The Parties ................................................................................................. 2

    B.    The Article ................................................................................................. 2

    C.    The Podcast ............................................................................................... 4

    D.    The Complaint ........................................................................................... 5

ARGUMENT ........................................................................................................... 5

    I.    The Complaint Fails to State a Claim as to the Article................................ 7

        A.    Wang's Claim That The Article Implied He Drugged Kizer Fails .................. 7

            1.    Defendants Did Not "Intend or Endorse" Such an Implication ............ 7

            2.    The Article Is Privileged as a Fair Report of Official Proceedings ...... 9

        B.    Wang's Claim That the Article Implies He Was Fired Because of Kizer
            Fails........................................................................................................ 13

            1.    The Article Does Not Imply Wang Was Fired for Conduct With
                Kizer................................................................................................ 13

            2.    ████████████████████████████████████████ 14

        C.    The Complaint Fails to Plead Actual Malice ................................................ 15

    II.    The Complaint Fails to State a Claim As to the Podcast ........................... 18

CONCLUSION ....................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013)..........................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................................5

*Becher v. Troy Publ'g Co.*,
   183 A.D.2d 230 (3d Dep't 1992)................................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................5, 16

*Biro v. Condé Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012).....................................................................................7, 12

*Biro v. Condé Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013).............................................................................6, 17, 18

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015).................................................................................................6, 16

*Bose Corp. v. Consumers Union of U.S., Inc.*,
   466 U.S. 485 (1984)............................................................................................................16, 17

*Brimelow v. New York Times Co.*,
   No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021)......................................................18

*BYD Co. v. VICE Media LLC*,
   531 F. Supp. 3d 810 (S.D.N.Y. 2021).........................................................................10, 14, 17

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)........................................................................................................6

*Cummings v. City of New York*,
   No. 19-cv-7723, 2021 WL 1163654 (S.D.N.Y. Mar. 26, 2021)........................................10, 12

*Edwards v. Nat'l Audubon Soc'y, Inc.*,
   556 F.2d 113 (2d Cir. 1977)......................................................................................................17

*Friedman v. Bloomberg L.P.*,
   884 F.3d 83 (2d Cir. 2017)..........................................................................................................9

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989)....................................................................................................17

*Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*,
    49 N.Y.2d 63 (1979) ..................................................................................................9

*James v. Gannett Co., Inc.*,
    440 N.Y.2d 415 (1976) ............................................................................................15

*Karp v. Hill & Knowlton, Inc.*,
    631 F. Supp. 360 (S.D.N.Y. 1986) ....................................................................9, 10

*Kesner v. Dow Jones & Co.*,
    515 F. Supp. 3d 149 (S.D.N.Y. 2021)................................................... *passim*

*La Liberte v. Reid*,
    966 F.3d 79 (2d Cir. 2020) ......................................................................................15

*McDonald v. E. Hampton Star*,
    781 N.Y.S.2d 694 (N.Y. App. Div. 2004) ..............................................................12

*McDougal v. Fox News Network, LLC*,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020)....................................................................16

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019)......................................................................................6

*Palin v. N.Y. Times Co.*,
    510 F. Supp. 3d 21 (S.D.N.Y. 2020)......................................................................15

*Rapoport v. Asia Elecs. Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000)........................................................................6

*Reliance Ins. Co. v. Barron's*,
    442 F. Supp. 1341 (S.D.N.Y. 1977)........................................................................17

*Rodriguez v. Daily News, L.P.*,
    142 A.D.3d 1062 (2d Dep't 2015) ..........................................................................10

*Satanic Temple, Inc. v. Newsweek Mag., Inc.*,
    661 F. Supp. 3d 159 (S.D.N.Y. 2023).......................................................................8

*Shuman v. N.Y. Mag.*,
    2021 WL 3161629 (N.Y. Sup. Ct. June 15, 2021)..................................................16

*Stepanov v. Dow Jones & Co.*,
    120 A.D.3d 28 (1st Dep't 2014) ........................................................................7, 13

*Sweigert v. Goodman*,
No. 18-cv-08653, 2021 WL 1578097 (S.D.N.Y. Apr. 22, 2021) .............................................15

*Tah v. Glob. Witness Publ'g, Inc.*,
991 F.3d 231 (D.C. Cir. 2021) ...........................................................................................17, 20

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017)................................................................................................14, 19

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*,
603 F. Supp. 2d 584 (S.D.N.Y. 2009)........................................................................................14

**Statutes**

N.Y. Civ. Rights Law § 74 ........................................................................................................7, 9, 12

N.Y. Civ. Rights Law § 76-a .............................................................................................................15

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................................1, 5

**Constitutional Provisions**

United States Constitution, First Amendment .................................................................................6

**Other Authorities**

Restatement (Second) of Torts § 566...............................................................................................12

iv

Defendants Sammy Sussman, Vox Media, LLC, and New York Media LLC hereby submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing Plaintiff Liang Wang's Complaint with prejudice.

## PRELIMINARY STATEMENT

This defamation lawsuit arises out of an article appearing on *New York* Magazine's Vulture website (the "Article"), as well as a podcast in which the Article's author, Sammy Sussman, participated (the "Podcast"). But you would not recognize the Article or the Podcast by the description in Plaintiff Liang Wang's ("Wang") Complaint. Far from being the one-sided hit pieces Wang alleges they are, the Article and the Podcast are not focused on Wang. Instead, the Article recounts the 2010 investigation of an alleged sexual assault involving New York Philharmonic trumpet player Matthew Muckey and then–New York Philharmonic French horn player Cara Kizer, and a subsequent 2020 arbitration. The Podcast features a discussion of the same topics. Wang is mentioned because, as the Article and Podcast state, he was present the night of the alleged assault, and Kizer *alleged* he handed her a glass of wine that Kizer tried unsuccessfully to prove was drugged. The Article and Podcast reach no conclusion about Wang. Nonetheless, he seeks $100 million in damages for two counts of defamation.

As to Count One, which relates to the Article, Wang does not claim that any statement therein is false or defamatory. Instead, he alleges the Article is susceptible of two defamatory implications: (1) "that Wang put a date rape drug into Kizer's wine, so that Muckey could sexually assault her," and (2) "that Wang (in addition to Muckey) was fired by the Philharmonic . . . for this supposed conduct against Kizer." ECF No. 1 ("Compl.") ¶ 2. Neither theory holds legal water. *First*, the Complaint does not and cannot adequately allege that the Article defamed Wang by implying he drugged Kizer. The Article did not intend or endorse such an implication, and indeed it includes denials by Wang and other facts supporting that he did not drug Kizer. Moreover, the

1

Article is absolutely privileged under New York law as a fair report of the police investigation, and any implication arising from its privileged facts is likewise not actionable. *Second*, the Complaint cannot adequately allege the Article implied Kizer's assault was the reason for Wang's firing and the subject of an arbitrator's decision to reinstate him, because the Article explicitly disavows any such implication, explaining that Wang was fired for "unrelated allegations of sexual misconduct," Bolger Decl. Ex. 1 ("Article") at 8. *Finally*, the Complaint fails to plausibly allege that Defendants acted with actual malice, as it must under New York's anti-SLAPP provision, which applies to this Action.

Count Two, as to the Podcast, must also be dismissed because the challenged statements therein are either substantially true or privileged, and because Wang has failed to plead Sussman acted with actual malice. This Court should, therefore, dismiss the Complaint in its entirety.

## FACTS

### A.    The Parties

Wang is a resident of New Jersey and principal oboe in the New York Philharmonic ("Philharmonic"). Compl. ¶ 8. Defendant Sammy Sussman ("Sussman"), author of the Article and participant in the Podcast, is a resident of New York and a freelance investigative reporter. Defendant Vox Media, LLC is the parent company of Defendant New York Media LLC and is the publisher of *New York* Magazine and its online platform, Vulture (together, "New York Media"), where the Article was published.

### B.    The Article

On April 12, 2024, New York Media published the Article "A Hidden Sexual-Assault Scandal at the New York Philharmonic: two musicians were fired for sexual misconduct.  Why are they back with the orchestra?," written by Sussman. Article at 1. The Article, which explicitly references both the records of a Vail Police Department investigation and an arbitration decision

described below, *id.* at 3–4, 9, reports on allegations by Kizer that she was sexually assaulted by Muckey. The Article recounts Kizer's allegations as reported in police records that, after a performance in Colorado, Kizer went to Muckey's rented apartment with Muckey and Wang. *Id.* at 2. The Article reports Kizer's allegations that "[w]hen they got to Muckey's condo, he and Wang got in the hot tub and tried to persuade Kizer to join them, but she declined. Kizer alleged Wang brought her a glass of red wine. Wang later told the police that Kizer got her own wine." *Id.* at 3. The Article next reports Kizer's allegation that she had no memories after drinking from the glass of wine until she woke up the next morning naked in Muckey's bed, with stains of her vomit around her, a gap in her memory, and a tampon "shoved so far up inside me that I could not reach it." *Id.* at 3–5. The Article also describes Kizer's allegation that she had been raped by Muckey (who admitted to sexual contact, but insisted it was consensual) and the investigation into Kizer's allegations. *Id.* at 5. It discusses that Kizer had a rape kit performed, and that Detective Rusty Jacobs of the Vail police conducted interviews with Kizer, Muckey, Wang, and other players and staff of the Philharmonic. *Id.* It also chronicles Jacobs's and Kizer's efforts to test for drugs in her system at the time of the alleged assault. *Id.* at 7. The Article also recounts that the local District Attorney "declined to prosecute Muckey," that Jacobs was told a hair-follicle test Kizer had ordered "did not meet the standards for litigation," and that a "forensic toxicologist called the practice of testing for date-rape drugs in hair follicles 'controversial.'" *Id.* The Article contains denials from Wang that he handed Kizer a glass of wine or that he drugged her, and from Muckey that he assaulted her. *Id.* at 3, 5, 7.

The Article next reports that in September 2018, the Philharmonic commissioned former Judge Barbara Jones to investigate Kizer's claims against Muckey. *Id.* at 8. As the Article states, "In addition to Kizer's claims, the orchestra learned about the earlier rape allegation against

Muckey and unrelated allegations and sexual misconduct against Wang." *Id.* The Article reports that, at the end of the investigation, the Philharmonic terminated Muckey and Wang for misconduct despite their denials. *Id.* The Article goes on to report that both musicians appealed the terminations through their union, and the parties submitted to arbitration. *Id.* at 8. The Article notes that the Philharmonic "defended the dismissals" but the arbitrator found "in favor of Muckey and Wang." *Id.* at 9. The Article quotes the arbitration decision's statement that the "events at issue occurred some 8, 10, and 12 years prior." *Id.* The Article also discusses that the arbitrator used a clear and convincing evidence standard in making his ruling, rather than the preponderance standard used by Judge Jones. *Id.*

Sussman and New York Media had contacted Wang (and his counsel, once so referred) several times in the months preceding publication both to solicit his input and eventually to seek his comment on specific statements and questions. *See* Compl. ¶¶ 30, 33. Wang did not "speak with [Sussman]" about the story, but a statement provided to New York Media by Wang's counsel was quoted in the Article. Article at 3, 9.[1]

## C.    The Podcast

After the Article was published, Sussman appeared on the Inline G Flute Podcast in an episode titled "NY Philharmonic Assault Scandal with Sammy Sussman." During the Podcast, Sussman stated, as relevant, that Kizer alleged she drank "a glass of red wine and remember[ed] nothing from the rest of that night," and that a rape test kit had been performed on Muckey, "who's the alleged, obviously, assailant in this case." Bolger Decl. Ex. 3 ("Podcast") at 5. At one point, the Podcast's host asked if Jones's recommendation to terminate Muckey and Wang from the

---

[1] The Complaint's account of the pre-publication correspondence between the parties is incomplete: Sussman emailed "Wang . . . five or six times since September [2023]" and "received no comment until days before publication."  Bolger Decl. Ex. 3 ("Podcast") at 18.

Philharmonic was "due to the allegations of what happened in 2010." *Id.* at 12. Sussman replied

that it was due to "[Kizer]'s allegation and another allegation against Muckey as described, and . . .

separate allegations of sexual misconduct against Liang Wang." *Id.* In addition, in describing the

arbitration decision, Sussman stated that it did "not comment on the underlying merit of the claims

against the two men," and that the arbitrator "merely note[d] that they have not met an evidentiary

standard." *Id.* at 14. Sussman further stated that the arbitrator "note[d], in relation to some of the

allegations, that it's hard for the men to prove that they understood no to mean no, I believe is what

he said. He said that it's hard for them to prove that no was said and that they did not have consent."

*Id.* at 15. Sussman also described "Cara's story" as "one of those rare cases where there's such

substantive police evidence." *Id.* at 21.

### D.    The Complaint

Wang filed a complaint in this Court on May 23, 2024, seeking $100 million in damages

from Defendants. Compl. ¶ 100.

## ARGUMENT

Over 30 invective-laden pages, the Complaint makes dramatic allegations of a targeted

plan to defame Wang. But these allegations have almost nothing to do with the actual statements

in the Article. The Article as published is a straightforward recounting of Kizer's allegation, the

ensuing investigation (including Wang's response), and the subsequent arbitration. Wang's

Complaint must be dismissed because he fails to plead the most basic elements of his claims.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court considering such

a motion must determine whether the complaint "contain[s] sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In order to avoid dismissal

under Rule 12(b)(6) . . . a plaintiff must state the grounds upon which his claim rests through

factual allegations sufficient to raise a right to relief above the speculative level." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 265 (S.D.N.Y. 2013) (*Biro II*) (cleaned up), *aff'd*, 807 F.3d 541 (2d Cir. 2015) (*Biro III*). "Because a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage." *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013) (cleaned up), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

In addition to the allegations in a complaint, a court may consider documents incorporated by reference or "integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). If documents contradict the plaintiff's allegations, "the documents control and this Court need not accept as true the [plaintiff's] allegations." *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000). Here, the Complaint relies heavily on the Article, *see* Compl. ¶¶ 1–2, 4, 39–49, 52, 54, 59; the Podcast, *see* Compl. ¶¶ 6, 65–72; the investigative report by the Vail Police Department (the "Police Report"), *see* Compl. ¶¶ 4, 13, 15, 17, 19, 48, 52–56; the 2020 arbitration decision (the "Arbitration Decision"), *see* Compl. ¶¶ 4, 13, 18, 25–28, 30–31; 37, 47, 48–50, 57, 59, 69. The Article, the Podcast, the Police Report, and the Arbitration Decision, *see* Bolger Decl., Exs. 1–5, are properly considered on this Motion because they are incorporated by reference into the Complaint.

To state a defamation claim in New York, a plaintiff must allege "(1) a written [or spoken] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 169–70 (S.D.N.Y. 2021) (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)). Wang has failed to plausibly allege the most basic elements of a defamation claim. His claims must be dismissed.

## I.      THE COMPLAINT FAILS TO STATE A CLAIM AS TO THE ARTICLE

Count One of the Complaint, which purports to state a claim based on the Article, does not identify a false, defamatory statement of fact in the Article. Instead, it seeks to recover based on two theories of defamatory implication derived from the Article's reporting into Kizer's sexual assault allegations. *See* Compl. ¶ 2. Both fail.

### A.      Wang's Claim That The Article Implied He Drugged Kizer Fails

The Complaint's first theory of defamation by implication is that the Article "implies that Wang put a date rape drug into Kizer's wine, so that Muckey could sexually assault her." Compl. ¶ 2. This claim should be dismissed both because Wang has not made the required showing that the Article endorsed that implication and because the reporting on the Police Report is privileged as a fair report under New York Civil Rights Law § 74.

### 1.      Defendants Did Not "Intend or Endorse" Such an Implication

In order to prevail on his claim for defamation by implication, even at the pleading stage, Wang "must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37–38 (1st Dep't 2014); *see also Biro v. Condé Nast*, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012) (*Biro I*) ("[W]here a plaintiff asserts a defamation claim based . . . on an alleged defamatory implication . . . , the Court will require an 'especially rigorous showing' that (1) the language may be reasonably read to impart the false innuendo, and (2) the author intends or endorses the inference." (citation omitted)).

The Article cannot be read to make or endorse the implication that Wang drugged Kizer. As an initial matter, the Article is about Muckey, not Wang.  And to the extent that Wang is involved, the Article is careful to cast Kizer's allegations as just that—allegations. *Kesner*, 515 F.

Supp. 3d at 173 ("[T]o the extent that the article implied that Kesner failed in his role as a gatekeeper, the article expressly attributes that accusation to the detailed and pungent MabVax Complaint. . . . To the extent Kesner is distressed with the implication that he failed as a gatekeeper and serially allowed his clients to violate the securities laws, his grievance is thus with MabVax."); *see Satanic Temple, Inc. v. Newsweek Mag., Inc.*, 661 F. Supp. 3d 159, 175–76 (S.D.N.Y. 2023) (finding statements made to reporter inactionable, even where their implication was "clear," because the article "expressly attribute[d]" them to the speaker). The Article says, "Kizer *alleged* that Wang brought her a glass of red wine. Wang told the police that Kizer got her own wine," *id.* at 3 (emphasis added), and "Kizer *told* her husband about the glass of wine." *Id.* at 4 (emphasis added). The Article further reports that after police-ordered drug tests provided "no evidence . . . that Kizer had been drugged," *Kizer* ordered GHB testing on her own hair. *Id.* at 7. In short, the story presents Kizer's allegations as allegations. It does not endorse them.

Indeed, the Article goes even further and "supplie[s] the other side of the story: [Wang]'s refutation." *Kesner*, 515 F. Supp. 3d at 173; *see Satanic Temple*, 661 F. Supp. at 175 ("[C]ourts have held that a statement contained in an article is not defamatory if the article attributes the statement to a source; makes clear that it is a mere allegation; and prints a denial of the allegation, to the extent one has been made."). The Article reports that Wang "told the police that Kizer got her own wine" and "denied that he had given Kizer anything." Article at 3, 7. The Article further notes "[t]here was no evidence . . . that Kizer had been drugged." *Id.* at 7. As to the Kizer-ordered testing, it notes that a positive result Kizer received was deemed to "not meet the standards for litigation" and that a "forensic toxicologist called the practice of testing for date rape drugs 'controversial.'" *Id.* The Article also notes that an independent arbitrator considered Kizer's claims against Muckey, heard Kizer's testimony, and found in Muckey's favor. *Id.* at 8–9. Moreover, the

Article explicitly discusses the idea that Kizer was *not* drugged: "Kizer added that whether or not she'd been given GHB, her clear incapacitation—she was blacked out and moments away from vomiting—left her unable to consent to sex." *Id.* at 7. Finally, the article quoted from Wang's lawyer's statement. *Id.* at 9. In short, the Article not only does not endorse the alleged implication, but it also clearly makes efforts to refute it.

### 2.    The Article Is Privileged as a Fair Report of Official Proceedings

Next, Wang's allegations that the Article defames him by reporting on Wang's involvement with the Kizer sexual assault allegations against Muckey must be dismissed as a matter of law because the statements the Article does make are privileged as a fair report of official government proceedings. *See* N.Y. Civ. Rights Law § 74 (McKinney 2023). Section 74 of the Civil Rights Law provides, in relevant part, that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." N.Y. Civ. Rights Law § 74. "New York courts adopt a 'liberal interpretation of the "fair and true report" standard of § 74 so as to provide broad protection to news accounts of [official] proceedings.'" *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017) (quoting *Becher v. Troy Publ'g Co.*, 183 A.D.2d 230, 233 (3d Dep't 1992)). "When determining whether an article constitutes a 'fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision." *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 68 (1979). Rather, "[a] statement is deemed a fair and true report if it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Friedman*, 884 F.3d at 93 (cleaned up). Where, as here, the "essential" documents of the proceeding are before the Court, "it is for the Court, in the first instance, to decide whether a publication is protected under section 74." *Karp v. Hill & Knowlton, Inc.*, 631 F. Supp. 360, 363

(S.D.N.Y. 1986) (collecting cases). Courts therefore regularly apply the privilege at the dismissal stage. *See, e.g.*, *id.*; *Cummings v. City of New York*, No. 19-cv-7723, 2021 WL 1163654, at *14–15 (S.D.N.Y. Mar. 26, 2021), *aff'd*, No. 21-1380, 2022 WL 2166585 (2d Cir. June 16, 2022); *BYD Co. v. VICE MEDIA LLC*, 531 F. Supp. 3d 810, 821–22 (S.D.N.Y. 2021), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022).

Here, there can be no dispute that the privilege applies to reports of a police investigation. *See, e.g.*, *Rodriguez v. Daily News, L.P.*, 142 A.D.3d 1062, 1063 (2d Dep't 2015) ("[T]he police investigation of the attempted rape constituted an 'official proceeding' under the statute."). The Article explicitly attributes its account to "documents from the Vail Police Department." Article at 4.  And the article accurately reports on the police records. For example:

- The Article states: "Kizer alleged that Wang brought her a glass of red wine." Article at 3; *see* Compl. ¶ 44. The Police Report says ███████████████████████████████ ████████████████████████████████████████████████ ████████  Bolger Decl. Ex. 4 ("Police Report") at 8, 12, 38.

- The Article reports "Wang later told the police that Kizer got her own wine." Article at 3. ████ ███████████████████████████████████████████████  Police Report at 34.

- The Article states it "is not disputed . . . that Kizer has no memories of what happened after she drank from that glass." Article at 3; *see* Compl. ¶ 44. The Police Report says ██████████ █████████████████████████████████████████████████ ████████████████████████████  Police Report at 8; *see id.* at 19 (█ ████████████████████████████████████████████████ ███████████████); *see also id.* at 10, 38.

- The Article states: "Kizer sent a sample of her hair to a private lab. . . . A six-centimeter hair sample was 'positive for the presence of GHB.' Later testing suggested the exposure occurred around the month of the alleged assault." Article at 7; *see* Compl. ¶ 43. The Police Report says ███████████████████████████████████████████████████████████████ ████████████████████████████████████████ Police Report at 43; *see id.* at 47 (████████████████████████████████████████).

- The Article states that, "[i]n later police interviews," "one colleague described Wang as 'sleazy.'" Article at 2; *see* Compl. ¶ 44. The Police Report says ██████████████████ ████████████████████████████████ Police Report at 35.

- The Article states: "Jacobs asked whether [Muckey and Wang] would be capable of drugging someone to commit a crime. 'Yes,' the man replied, 'I could see that.'" Article at 5; *see* Compl. ¶ 44. Detective Jacobs ██████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████ Police Report at 23.

All of these facts in the Article are thus privileged as a fair report of the Police Report.

And even if the Article implied Wang drugged Kizer *and* endorsed that implication (and it does not), the Article would still be a fair report of the Police Investigation because when facts are privileged, "any defamatory implication that follows from" them is likewise privileged. *Kesner*, 515 F. Supp. 3d at 174. In *Kesner*, the plaintiff alleged that an article impliedly defamed him by accusing him of failing to act as a "gatekeeper" and letting his client violate securities laws. The court dismissed the claim because that alleged implication was a "fair synopsis" of pleadings in a litigation involving the plaintiff. As the court held, because "components of the article . . . were absolutely privileged, [so too was] any defamatory implication that follows from these

allegations." *Id.* Similarly here, the factual components of the Article are privileged, and so too would be any implication arising therefrom.

It would also be protected as opinion. "[T]he extent to which a reader may draw any inference about [plaintiff]'s culpability [from facts privileged by § 74] is a reflection of the author's opinion based on fully disclosed facts." *Biro I*, 883 F. Supp. 2d at 481; *accord* Restatement (Second) of Torts § 566 cmt. c.  Thus, even if the Article made and could be read to intend or endorse an implication that Wang drugged Kizer, *but see supra* § I.A.1, that implication would nevertheless be protected as an opinion based on the privileged facts contained in the Police Report.

Finally, to the extent the Complaint claims that "the arbitration decision reveals" facts different from those reported from the Police Record, Compl. ¶¶ 49–50, 57, these allegations do nothing to defeat the fair report privilege, which concerns itself only with the accuracy of the report as compared to the relevant official proceeding. *See Cummings*, 2021 WL 1163654, at *14 ("The question is not whether or not the statement is true. The question is whether it is a substantially accurate description of the claims made in the proceeding." (cleaned up)).

Finally, to the extent the Complaint alleges the Article "omitted" parts of the Police Report about (1) the amount of wine Kizer drank from the glass at Muckey's condo, and (2) the amount of alcohol Kizer drank at the party beforehand, claiming that "the Vail police records tell a different story," Compl. ¶¶ 52–56, that argument is also unsuccessful. The fair report privilege is not defeated by claims that an article omitted facts from the proceeding so long as "those omissions did not alter the substantially accurate character of the article," *McDonald v. E. Hampton Star*, 781 N.Y.S.2d 694, 695 (N.Y. App. Div. 2004). Here, Plaintiff claims the Article was *in*accurate by suggesting Kizer's memory loss was attributable *only* to the wine she drank at Wang and Muckey's

condo. But that allegation is implausible on its face. The Article quotes Kizer discussing an alternative possibility: "Kizer added that whether or not she'd been given GHB, her clear incapacitation—she was blacked out and moments away from vomiting—left her unable to consent to sex." Article at 7. The Article, therefore, fairly reports on the Police Report.

**B.      Wang's Claim That the Article Implies He Was Fired Because of Kizer Fails**

Wang's second theory of defamation by implication is that the Article "implies that Wang (in addition to Muckey) was fired by the Philharmonic in 2018 for this supposed conduct against Kizer" Compl. ¶ 2; *see id.* ¶¶ 45–47. This claim must be dismissed because the Article does not make or endorse that implication and because it is, in any event, substantially true.

**1.      The Article Does Not Imply Wang Was Fired for Conduct With Kizer**

Wang has not met the heightened standard of pleading that the Article intends or endorses this implication, *Stepanov*, 987 N.Y.S.2d at 44, because the Article, in fact, explicitly disavows any such implication. It reads: "The [Philharmonic] hired Barbara S. Jones, a former federal judge, to conduct an independent investigation. In addition to Kizer's claims, the orchestra learned about the earlier rape allegation against Muckey and *unrelated allegations of sexual misconduct against Wang*. (Muckey and Wang denied the allegations.)" Article at 8 (emphasis added). The Article, therefore, clearly disclaims the alleged defamatory implication. That, in and of itself, is reason to dismiss the claim as based on this alleged implication.

There's more: In describing the arbitration, the Article notes the union's position that "two dues-paying members had the right to have a neutral arbitrator hear and decide the merits of their discharge *cases*," *id.* at 8 (emphasis added), and when recounting the arbitrator's ruling the Article quotes the arbitrator's statement that the "*events* at issue occurred some 8, 10, *and* 12 years prior," clearly indicating multiple, separate events. *Id.* (emphases added).

The Complaint also avers that the juxtaposition of the headline and the photo in which

Muckey, Wang, and Kizer are circled contribute to an implication that Wang was fired for misconduct against Kizer. Compl. ¶¶ 39–41. The headline reads: A Hidden Sexual-Assault Scandal at the New York Philharmonic: two musicians were fired for sexual misconduct. Why are they back with the orchestra?" Article at 1. ███████████████████████████████

███████████████████████ And Wang's claim about the juxtaposition of the image and the headline fails. Where, as here, a headline does "not identify [Plaintiff] by name," it is "not independently actionable as defamation but must instead be evaluated in the context of the entire article." *Kesner*, 515 F. Supp. 3d at 176; *accord BYD*, 515 F. Supp. 3d at 820–21. New York law permits a headline "some drama in grabbing its reader's attention, so long as the headline remains a fair index of what is accurately reported below." *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009). Here, the headline is a fair index of the Article, which explained clearly that Wang was fired for claims "unrelated" to "the allegations Kizer made against Muckey." Article at 8. The headline here is nonactionable.

    2.    ███████████████████████████

The claim that the Article defamed Wang by implying he was fired because of sexual misconduct against Kizer should also be dismissed ███████████████████████████

██████████████████████████████████████████████████████

███████████████████ "Because falsity is an element of New York's defamation tort, and "falsity" refers to material not substantially true, the complaint in this case must plead facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). A statement is substantially true if it "would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 242 (cleaned up).

Here, even if the Article implied that Wang was terminated because he was involved in

sexually assaulting Kizer, ██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ Bolger Decl. Ex. 5 ("Arbitration Decision") at 29, 37–

38. Thus, even if the Article did imply Wang was fired for sexual misconduct with Kizer (it did

not), ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

## C. The Complaint Fails to Plead Actual Malice

The Complaint also fails because it does not plausibly allege Defendants acted with actual

malice. Wang's claims are subject to New York's Anti-SLAPP law, which was amended in 2020

by the New York Legislature to "broaden" its scope. *Sweigert v. Goodman*, No. 18-cv-08653, 2021

WL 1578097, at *1 (S.D.N.Y. Apr. 22, 2021). The amendment "substantially broadened the reach

of the actual malice rule," *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020), such

that it applies to cases arising from "lawful conduct in furtherance of the exercise of the

constitutional right of free speech in connection with an issue of public interest." N.Y. Civ. Rights

Law § 76-a. Section 76-a applies to this diversity action. *See, e.g.*, *Palin*, 510 F. Supp. 3d at 25; *cf.*

*La Liberte v. Reid*, 966 F.3d 79, 86 n.3 (2d Cir. 2020).[2]

The "public interest" provision "shall be construed broadly, and shall mean any subject

other than a purely private matter." N.Y. Civ. Rights Law § 76-a(d). It is beyond dispute that an

---

[2] In any event, Wang, who describes himself as "one of the world's most accomplished classical musicians," Compl. ¶ 8, is a public figure who is required to prove actual malice. *See James v. Gannett Co., Inc.*, 440 N.Y.2d 415, 422 (1976) ("The essential element underlying the category of public figures is that the publicized person has taken an affirmative step to attract public attention.").

article and podcast concerning the alleged sexual misconduct of members of the New York Philharmonic are matters of public concern. *Cf. Shuman v. N.Y. Mag.*, 2021 WL 3161629, at *2 (N.Y. Sup. Ct. June 15, 2021), *aff'd*, 211 A.D.3d 558 (1st Dep't 2022) ("[A]ccounts of sexual harassment . . . at well known academic institutions are matters of social concern to the public.").

Wang must, therefore, plausibly allege that Defendants acted with actual malice. The Second Circuit has affirmed that to allege actual malice, a plaintiff "must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice." *Biro III*, 807 F.3d at 546 (alteration in original) (quoting *Twombly*, 550 U.S. at 556). Actual malice requires "clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984). Allegations of actual malice that are no more than "pure speculation" and are "supported not by facts but by only conclusory statements" are insufficient grounds to infer actual malice. *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020) (dismissing defamation claim because plaintiff's allegations of personal bias were insufficient to show actual malice). Wang's conclusory allegations do not meet this high standard.

*First*, the thrust of the Complaint's actual malice allegations is that "Sussman and New York Magazine, in the service of their preconceived narrative, included only dubious claims selectively manipulated to appear to support the notion of Wang drugging Kizer, while deliberately not reporting the actual facts that revealed strong reasons to doubt how the article portrays the drugging allegation." Compl. ¶ 58; *see id.* ¶¶ 52–57. This theory is neither legally sufficient nor factually plausible. "[P]reconceived notions or suspicions usually do little to show actual malice" because "virtually any work of investigative journalism begins with some measure of suspicion."

*Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 241 (D.C. Cir. 2021). Wang was required to plead more than just a preconceived storyline: he was required to, and did not, plead deliberate falsification. Nor is Wang's allegation that Defendants omitted facts sufficient to plead malice. Courts in this District have rejected the "contention" that "selective omission of relevant data provides circumstantial evidence of defendants' actual malice." *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1352 (S.D.N.Y. 1977); *see Biro II*, 963 F. Supp. 3d at 285 ("Obviously the author of an article will have to choose which facts to include and which to omit." (quoting *Reliance*, 442 F. Supp. at 1352)).

*Second*, Wang's nebulous allegation that Sussman failed to investigate information in the Article about the Police Report or an alleged GHB drugging, *see* Compl. ¶ 55, is insufficient. Failure to investigate, "even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard." *BYD*, 531 F. Supp. 3d at 826 (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989)).

*Third*, the Complaint's assertion that New York Media "revealed its malice and bias" by "refusing to revise the article" after receiving correspondence from Wang's counsel asserting the Article was false and defamatory, Compl. ¶ 62; *see id.* ¶¶ 62–64, is also insufficient to constitute actual malice. "[L]iability under the [actual malice standard] cannot be predicated on mere denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977). In addition, to the extent that Wang is referring to *post-publication* correspondence from Wang's counsel, that correspondence is irrelevant to the actual malice analysis, which is judged "at the time of publication." *Bose*, 466 U.S. at 512.

*Finally,* even taken together these factors do not constitute allegations of purposeful avoidance of the truth. In *Brimelow v. New York Times Co.*, No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021), the plaintiff alleged that the New York Times acted with actual malice based on a list of factors almost identical to those at issue here, including that the defendant allegedly ignored plaintiffs' denials, acted with ill will or a preconceived narrative, failed to investigate, and failed to act impartially. *See id.* at *3. The Second Circuit considered these factors and concluded they did not add up to actual malice, holding there was "no combination of allegations from which one could plausibly infer that the Times was purposely avoiding the truth." *Id.* Thus, under the *Brimelow* analysis, Wang has not alleged actual malice.

One final note: "including denials of a plaintiff rebuts [an] inference of actual malice." *Biro II*, 963 F. Supp. 2d at 283. Here, the Article includes several: it reports that (1) Wang "told the police that Kizer got her own wine," Article at 3; (2) "Wang denied that he had given Kizer anything," *id.* at 7; (3) "Wang denied the allegations" that led to his 2018 firing, *id.* at 8; and (4) "[a] lawyer for Wang stressed that [the arbitrator] is 'one of the most highly respected labor arbitrators' and the hearing he conducted 'finally allowed all of the facts to be fully examined, and after the hearing, Arbitrator Bloch concluded that the Philharmonic had simply failed to prove any misconduct' by Wang," *id.* at 9. And far from presenting a one-sided account of any implication of drugging, the Article specifically notes that police-ordered testing produced "no evidence . . . that Kizer had been drugged" and that Kizer's private testing was deemed to "not meet the standards for litigation" and was called "controversial" by a forensic toxicologist. *Id.* at 7. In short, Defendants made efforts throughout the Article to include Wang's side of the story. Wang has simply failed to allege actual malice.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM AS TO THE PODCAST

This Court should also dismiss Count Two—which takes issue with six statements (and

one laugh) by Sussman in the Podcast. *First*, Wang has failed to adequately plead that any of the complained of statements are false, *see Tannerite Sports*, 864 F.3d at 242:

- Wang's claim regarding Sussman's report of Kizer's allegation that she drank "a glass of red wine and remember[ed] nothing from the rest of that night," Podcast at 5; *see* Compl. ¶ 66, fails to plausibly allege falsity because it does not have a different effect on the mind of the reader than the pleaded truth— ███████████████████████████████ ████████████████████████████ Police Report at 8. Through the same principles discussed above, this is also a privileged fair report of the Police Report.

- Wang's claim that Sussman "answered affirmatively" after the Podcast's host asked if former Judge Jones's recommendation to terminate Muckey and Wang was "due to the allegations of what happened in 2010," Podcast at 12, fails because Sussman actually stated that Wang was *not* terminated because of what happened with Kizer, noting the recommendation was due to "separate allegations of sexual misconduct against Liang Wang." *Id.*

- Wang's claim that Sussman's statement that the arbitration decision "does not comment on the underlying merit of the claims against the two men," *id.* at 14, is false also fails because the arbitrator stated that ████████████████████████████████████ ████████████ Arbitration Decision at 7, ██████████████████████████████ ████████████████████████████████████████████████ *id.* at 41.

- Wang's claim that the Complaint alleges that Sussman "defame[d] Wang with a new false contention—saying that his defense in the arbitration was that he did not understand 'no to mean no.'" Compl. ¶ 94; *see id.* ¶ 69. But Sussman actually stated that the *arbitrator* "note[d], in relation to some of the allegations, that it's hard for the men to prove that they understood no to mean no, I believe is what he said.  He said that it's hard for them to prove that no was

said and that they did not have consent." Podcast at 15. This accurately paraphrases the arbitration decision: ███████████████████████████████████████████ ███████████████████████████████████████ Arbitration Decision at 10.

- Wang claims Sussman's statements that "Cara's story" is "one of those rare cases where there's such substantive police evidence" defames him. Podcast at 21; *see* Compl. ¶ 71. But, in fact, as the Police Report shows, there was substantial police evidence, including witness interviews, a rape kit, matched DNA tests, etc. To the extent this could even be said to be of and concerning Wang, *see Kesner*, 515 F. Supp. 3d at 170, it is substantially true and privileged.

        *Second*, Count Two also fails because Wang failed to plead Sussman acted with actual malice for all the reasons discussed above. *Supra* § I.C. The only additional allegation of actual malice in Count Two appears to be Wang's claim that Sussman's statement that "he did not reach out to Wang for comment until he was otherwise potentially ready 'to move forward with the story'" is probative of a preconceived narrative. Compl. ¶ 70. As discussed above, not only is the existence of a preconceived narrative insufficient to allege actual malice, *Tah*, 991 F.3d at 241, but this simply misstates what Sussman said on air. In fact, Sussman was describing his many efforts to reach Muckey and Wang—efforts that indicate strongly an *absence* of actual malice. Sussman's statements in the Podcast point not toward actual malice but away from it.

## <u>CONCLUSION</u>

        For the foregoing reasons, Defendants respectfully request this Court enter an order dismissing the Amended Complaint against them, with prejudice.

Dated:  New York, New York
         July 22, 2024

                                   Respectfully submitted,

                                   DAVIS WRIGHT TREMAINE LLP


                                   By:    /s/ Katherine M. Bolger
                                   Katherine M. Bolger (N.Y. Bar No. 2976868)
                                   1251 Avenue of the Americas, 21st Floor
                                   New York, NY  10020-1104
                                   (212) 489-8230 Phone
                                   (212) 489-8340 Fax

                                   *Counsel for Defendants*



TO:     Karen Eileen Meara
        Carter Ledyard & Milburn LLP
        28 Liberty Street - 41st Floor
        New York, New York 10005
        212-238-8757
        Fax: 212-732-3232
        Email: meara@clm.com

        Alan S. Lewis
        Carter Ledyard & Milburn LLP
        28 Liberty Street
        41st Floor
        New York, NY 10005
        917-533-2524
        Fax: 212-732-3232
        Email: lewis@clm.com

        *Counsel for the Plaintiff*