UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

| | |
|---|---|
| LIANG WANG,<br><br>                Plaintiff,<br><br>   v.<br><br>SAMMY SUSSMAN, VOX MEDIA, LLC., AND NEW YORK MEDIA, LLC,<br><br>                Defendants. | Case No. 1:24-cv-03987-(AS)(RWL)<br><br>[rel. 1:24-cv-03356 (AS)(RWL);<br>  1:24-cv-03348 (AS)(RWL)] |

-----------------------------------------------------------------

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO AMEND/ALTER AND CORRECT JUDGMENT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 59(e) AND 60(a)**

CARTER LEDYARD & MILBURN LLP
28 Liberty Street, 41st Floor
New York, NY 10005
(917) 544-2524
lewis@clm.com
meara@clm.com

*Attorneys for Plaintiff*

*Of Counsel*

    Alan S. Lewis
    Karen E. Meara

Pursuant to Federal Rules of Civil Procedure 59(e) and Rule 60(a), Mr. Wang moves to alter and amend, and correct, the Court's Opinion and Order dated January 13, 2025 (ECF #67) (the "Order"). In addition to moving for reinstatement of the Complaint based on the Order's factual and legal errors, Wang also files this motion to correct a statement in footnote one of the Order that *incorrectly* implies that the New York Philharmonic relied on *an investigation* as its basis for *recently* terminating Wang.

## I.     The Complaint Should Be Reinstated

As the Order notes, Wang's lawsuit targets two of the Article's related but distinct defamatory implications:

> Wang says the article and podcast have two defamatory implications: that Wang drugged Kizer and that the Philharmonic fired Wang because of Kizer's allegations.

Order at 11.

The Order then explains its reasons for rejecting Wang's claim as it relates to both defamatory implications. Because the errors inherent in the Court's rejection of Wang's claim that he was defamed by the implication he was fired "because of Kizer's allegations" (*id.*) are particularly acute, this motion focuses there.

In connection with his Rule 59(e) motion, Mr. Wang's obligation is to "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (quotation omitted).

1

The first such error concerns the Court's choice to overlook what the Complaint pleads about *how* the defamatory Article was widely understood, *viz.*, that it was widely understood to suggest that Wang was fired for drugging Kizer (and to suggest that Wang had actually drugged Kizer). *See* Complaint (ECF #1) ¶ 46 (noting how the Violin Channel characterized the article's theme as "outlining allegations of misconduct *by … Liang Wang against former NY Philharmonic horn player, Cara Kizer*, in 2010") (emphasis added). By citing that reporting in the Violin Channel, the Complaint underscores that a defamatory implication (tying Wang's firing to the Vail/Kizer events) was *at least* plausible, given that the Article was demonstrably understood by readers to carry just that defamatory implication. At oral argument, the Court nevertheless stated, "I'm not considering that" (*see* Redacted Transcript of November 20, 2024 Oral Argument ("Tr."), attached to the Declaration of Alan Lewis ("Lewis Decl.") at Exhibit C, at 59) in reference to how the Violin Channel described its understanding of the Article. The Court's only explanation for expressly not considering this portion of *the Complaint* was its perception that it was limited to "the article [and] the podcast." Tr. at 59. To be sure, while courts are generally prohibited from considering materials *extraneous* to a defamation complaint (beyond the defamatory publications themselves), here, by declining to consider the evidence *presented in the Complaint* as to how the Article's defamatory sting was understood, it was not merely declining to consider extrinsic materials but was erroneously rejecting the well pled and documented fact *set forth in the Complaint itself*. Indeed, there is no question that if at trial, Wang proffered evidence regarding the defamatory implication of the Article in the form of the Violin

2

Channel article, that Violin Channel article would be competent evidence of the Sussman Article's defamatory meaning. *See, e.g., Tah v. Global Witness Publishing, Inc.*, 413 F.Supp.3d 1, 11 (D.D.C. 2019) ("the most compelling evidence that the Report could reasonably be read to suggest bribery is that the Liberian government *actually* understood the Report that way"). By refusing to consider similar evidence, actually proffered in the Complaint to establish the plausibility of an understanding of the Article as imparting a defamatory implication, the Court effectively but erroneously applied a more stringent test for Wang's Complaint to survive a Rule 12(b)(6) motion than Wang would have faced at trial to prove this element of his claim to the fact finder.

In rejecting Wang's claim, the Court also made the factual error of characterizing the Article as having "suppli[ed] its readers with ready access to the truthful information." Order at 13. But "the truthful information" in relation to the defamatory implication that Wang was purportedly fired for drugging Kizer is that *he was not fired for or accused of drugging Kizer*—which the Article could and should have said, *but did not*. In any event, the Order builds upon its factual error by making it the foundation of its decision, stating that "no court has ever held that a defendant intended a defamatory implication where the defendant also promptly relayed true statements that undercut the false suggestion." *Id.* at 14.

But in this fashion, the Court built a legal error atop its factual mistake. The Court cited *no authority* for the idea that a defendant is immune from a claim of defamation by implication where its challenged publication contained some content that could be read to "undercut the false suggestion." *Id.* To the contrary, courts regularly permit claims of

3

defamation by implication to proceed past the motion to dismiss stage, even where the publication that contains the defamatory implication also includes some statements that undercut such a defamatory implication. *See, e.g.*, *Beneficient v. Gladstone*, No. 6:23-CV-376-JDK, 2024 WL 2338256, at *6 (E.D. Tex. May 22, 2024) (noting defendant's argument that "statements *actually* in the Article expressly contradict" plaintiffs' alleged "gist" but then explaining that "[t]his fact certainly does not defeat the overall reasonableness of the alleged defamatory gist"). The same is true here—even if the Article can be read to impart some facts that are arguably in tension with its defamatory implications, the conclusion remains that it is *at least plausible* that those facts purportedly included in the Article *failed to defeat* the plausibility of an overall defamatory gist of the Article.

The Order also holds that the Article, even though widely understood to communicate the defamatory gist falsely tying Wang's firing to Kizer's allegations, cannot be read to reach the conclusion that the Defendants *intended or endorsed* that defamatory gist. But the mere fact that the Article *can* be read to impart that defamatory gist, through its juxtaposition of facts and use of provocative quotations and images, also requires the conclusion that it is *at least plausible* that that the widely understood defamatory gist was also intended. *See, e.g., Beneficient*, 2024 WL 2338256, at *7 ("the article repeatedly juxtaposes facts and uses provocative language in ways to convey the defamatory gist identified by Plaintiffs. *That is sufficient evidence that Gladstone intended to convey the defamatory gist*.") (emphasis added). *See also Dallas Morning News, Inc. v. Tatum,* 554 S.W.3d 614, 636 (Tex. 2018) ("it will usually be the case that if

4

a meaning is reasonably capable of being communicated from the gist as a whole, the fact that the gist arises will be sufficient textual evidence that the publisher meant to communicate it").

In short, a combination of errors, factual as well as legal, undermine the conclusion that Wang's Complaint is insufficient to withstand a motion to dismiss, and accordingly, the Complaint should be reinstated.

## II.     Footnote 1 Should Be Corrected

The first footnote of the Order reads as follows:

> The article was further updated on November 5, 2024 to reflect Muckey's and Wang's dismissal from the Philharmonic after a separate investigation post-dating the events at issue in this case. Wang's claims do not involve this update.

Order at FN1. Thus, while relying solely on the updated Article, the Order suggests that Wang's termination by the Philharmonic, in the autumn of 2024, was based on "a separate investigation post-dating the events at issue in this case." *Id.* To be sure, the updated Article did indeed convey that impression, but that impression was and is demonstrably false.

On October 15, 2024, Mr. Wang was notified by the Philharmonic that it would terminate him, after the current contract period. The entirety of the Philharmonic's statement to Mr. Wang about the reasons for his termination was contained in a letter to Wang from the Philharmonic's CEO, which in its entirety reads as follows.

> Dear Liang:
>
> This is to notify you that, pursuant to Article XIV of the collective bargaining agreement between the Philharmonic-Symphony Society of New York ("Society") and Local 802 of the American Federation of Musicians, the Society will not be re-

5

> engaging you as member of the Orchestra for the year beginning September 21, 2025.
>
> During the remainder of the current year (2024-25), you should not come to the Society's premises to rehearse or perform or for other reasons unless requested to do so by the Society's management. If you need access to the dressing room, please organize with the Orchestra Personnel Office.
>
> We wish you well in your future endeavors.[1]

As is evident, the Philharmonic did not reference any investigation, any findings of just cause for misconduct or otherwise, in connection with its notice to Mr. Wang of his termination. Instead, the only "explanation" given by the Philharmonic for terminating Wang (or not "reengaging" him) was a reference to a contractual provision which the Philharmonic apparently interprets as giving it complete discretion to not "reengage" a tenured member of the orchestra, even without just cause.

Nevertheless, about three weeks later, on November 5, 2024, Defendants posted an update to the original defamatory Article stating as follows:

> This story was originally published on April 12, 2024. Following publication, the New York Philharmonic *launched an investigation that resulted in the dismissal of* Matthew Muckey and Liang Wang, the two musicians accused of misconduct." (emphasis added).

But as demonstrated above, the Philharmonic did *not* rely on any investigative findings in terminating Wang (or Muckey) and the statement or implication of the amended Article that an investigation "resulted in" Wang's dismissal is false. Nevertheless, in footnote one, the Court, assuming the accuracy of the updated Article, itself inaccurately suggested that the Philharmonic had cited investigative findings as the rationale for Wang's termination.

---

[1] The full text of the Philharmonic's communication to Wang regarding the termination of his employment and continued suspension, as copied to Wang's attorneys, is attached as Exhibit A to the Declaration of Alan S. Lewis ("Lewis Decl.").

6

Respectfully, footnote one should be revised to correct this inaccuracy. A motion to correct mistakes in a judgment or order, including "a clerical mistake or a mistake arising from oversight or omission" may be made "on motion" pursuant to Rule 60(a) of the FRCP. Hence, we respectfully request that the Court remove from its official Opinion and Order any reference to subsequent developments beyond the mere fact that the Article was updated on November 5 2024, and that as of the Court's January 13, 2025 date of decision, Plaintiff had not *yet* amended his Complaint to incorporate any claims relating to the November 5, 2024 amended Article.

## **CONCLUSION**

For all of the reasons stated, Plaintiff's Rules 59 and 60 motions to alter/amend and correct should be granted.

Dated:   New York, New York
         February 10, 2025

> Respectfully submitted,
>
> CARTER LEDYARD & MILBURN LLP
>
> By:   /s/ Alan S. Lewis
>       Alan S. Lewis
>       Karen E. Meara
>       28 Liberty Street, 41st Floor
>       New York, NY 10005
>       (917) 544-2524
>       lewis@clm.com
>       meara@clm.com
>
> *Attorneys for Plaintiff Liang Wang*