UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LIANG WANG,

                              Plaintiff,

            -against-

SAMMY SUSSMAN, VOX MEDIA LLC, and
NEW YORK MEDIA LLC,

                              Defendants.

---

24-cv-3987 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

Plaintiff Liang Wang sued defendants Sammy Sussman, Vox Media, and New York Media for defamation. Wang's suit concerned an article Sussman wrote for Vulture, one of New York Media's outlets, which described incidents of sexual misconduct at the New York Philharmonic. Wang claimed that the article falsely portrayed him as committing and being fired for a specific incident of sexual misconduct.

The Court granted defendants' motion to dismiss Wang's complaint. *See Wang v. Sussman*, 2025 WL 81355, at *12 (S.D.N.Y. Jan. 13, 2025). Wang then moved for reconsideration (and for one modification of the Court's order) under Federal Rules of Civil Procedure 59(e) and 60(a). Defendants moved for attorney's fees under New York Civil Rights Law § 70-a. For the following reasons, both motions are DENIED.

## LEGAL STANDARDS

"A court may grant a Rule 59(e) motion only when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (cleaned up). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Federal Rule of Civil Procedure 60(a) provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." "In deciding whether Rule 60(a) applies, courts distinguish between changes that implement the result intended by the court at the time the order was entered and changes that alter the original meaning to correct a legal or factual error." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 150–51 (2d Cir. 1999) (internal quotations and citation omitted). "Rule 60(a) allows for the former, but not the latter." *Id.* at 151.

## DISCUSSION

### I.    Wang's Rule 59(e) and 60(a) motion is denied.

The Second Circuit has been clear: "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). Wang, however, does exactly that.

His motion raises two arguments for reconsideration. First, he says that in rejecting his defamation-by-implication claim, the Court improperly ignored the complaint's allegation that a website called the "Violin Channel" characterized Sussman's article as "outlining allegations of misconduct by . . . Liang Wang against former NY Philharmonic horn player, Cara Kizer, in 2010." Dkt. 1 ¶ 46. The complaint also alleged that "comments" posted on Vulture's website referred to Wang and the article's other subject, Matthew Muckey, as "rapists who drug their coworkers," "widely-known predators," and "DateRapeDrugBros." *Id.* Wang argues that the reaction of these readers is proof-positive of defamation.

To be clear, the Court considered the entirety of Wang's complaint in addressing defendants' motion to dismiss. But as the Court observed in its opinion, New York courts have consistently held that the inquiry on a defamation-by-implication claim is an objective one, and when deciding whether a communication can be "reasonably read . . . to affirmatively suggest that the author intended or endorsed [the defamatory] inference," courts focus on "whether the plain language of the communication itself suggests that an inference was intended or endorsed." *Wang*, 2025 WL 81355, at *9 (quoting *Stepanov v. Dow Jones & Co., Inc.*, 987 N.Y.S.2d 37, 44 (1st Dep't 2014)). Wang fails to cite a single New York case suggesting that reader reactions—especially the kind of generalized web comments at issue here—are probative to this inquiry. Instead, he points to *Tah v. Global Witness Publishing, Inc.*, 413 F. Supp. 3d 1, 11 (D.D.C. 2019), but that court wasn't applying New York law, and in fact agreed that on a defamation-by-implication claim, "[t]he test . . . is not whether some actual readers were misled, but whether the hypothetical reasonable reader could be (after time for reflection)." *Id.* (alteration in original) (quoting *Farah v. Esquire Mag.*, 736 F.3d 528, 537 (D.C. Cir. 2013)). The facts in *Tah* were also unique; the allegedly defamatory report was directed to the Liberian government and the court simply observed that "the considered views of the investigatory committee formed by the Government of Liberia—*which investigation the [allegedly defamatory report] had urged*—is insightful." *Id.* (emphasis added). That's a far cry from this case and the sporadic web posts alleged in the complaint. So even considering that allegation, dismissal was proper.

Second, Wang says the Court held that "a defendant is immune from a claim of defamation by implication where its challenged publication contained some content that could be read to 'undercut the false suggestion.'" Dkt. 82 at 3. That's not what the Court said. Rather, it did what New York law requires. It applied the law's framework to the particular statements in the article and podcast interview at issue, 2025 WL 81355, at *9–12, and compared the communications here with others where courts recognized a potential claim. The Court noted that "[w]here courts have

held that a defendant endorsed or intended a defamatory implication, the signs of intent have been much clearer." *Id.* at *11. Of course, this analysis included consideration of statements undercutting the false suggestions that Wang alleged (it would have been legal error not to consider them), but the Court didn't announce the kind of categorical rule Wang suggests in his briefing, and Wang once again cites to no New York cases supporting his argument.

He does point to a couple of Texas cases that he claims require the Court to come out a different way. *See, e.g.*, *Beneficient v. Gladstone*, 2024 WL 2338256 (E.D. Tex. May 22, 2024); *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614 (Tex. 2018). It's unclear what relevance these cases have here; they involved different facts and circumstances and were decided under a different state's defamation laws. Wang relies on out-of-context snippets from these cases about a Texas defamation cause of action—so-called defamatory gist—that New York law doesn't recognize. *See Tatum*, 554 S.W.3d at 629 (distinguishing between "gist" and "implication"). But looking to what Texas courts have said about defamation-by-implication reaffirms the Court's ruling. *See id.* at 636 ("[I]n a discrete-implication case, it becomes especially relevant for the court to apply the requirement that the publication's text demonstrates the publisher's intent to convey the meaning the plaintiff alleges. . . . The especially rigorous review . . . is merely a reflection of the 'underlying principle' that obligates 'judges to decide when allowing a case to go to a jury would, in the totality of the circumstances, endanger first amendment freedoms.'" (quoting *Ollman v. Evans*, 750 F.2d 970, 1006 (D.C. Cir. 1984) (Bork, J., concurring))). Reconsideration is unwarranted on this basis.

Finally, Wang moves to correct footnote 1 of the Court's opinion under Rule 60(a). Footnote 1 states:

> The article was further updated on November 5, 2024 to reflect Muckey's and Wang's dismissal from the Philharmonic after a separate investigation post-dating the events at issue in this case. Wang's claims do not involve this update.

*Wang*, 2025 WL 81355, at *4 n.1. Wang says that this footnote is wrong because the Philharmonic did not rely on any investigative findings in dismissing Wang. *See* Dkt. 82 at 5–6. According to Wang, the Philharmonic "did not reference any investigation, any findings of just cause for misconduct or otherwise, in connection with its notice to Mr. Wang of his termination." *Id.* at 6.

As reflected by the footnote itself, Wang's claims did not involve the update at issue and the Court made no rulings about it. Relief under Rule 60(a) is unwarranted on that basis alone, given that the rule "permits only a correction for the purpose of reflecting accurately a decision that the court actually made." *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995). Further, Wang doesn't dispute that the Court accurately described the update; he just says that the update itself was wrong. That's not grounds for relief under Rule 60(a). However, to the extent that Wang is concerned that another court or decisionmaker might (wrongly) conclude that the Court made a finding that the Philharmonic dismissed Wang after an investigation, the Court made no such finding and reached no conclusions about the circumstances of Wang's dismissal from the orchestra.

## II.    Defendants' motion for attorney's fees is denied.

Having prevailed on their motion to dismiss, defendants now seek attorney's fees based on New York's anti-SLAPP law. So-called "anti-SLAPP laws" are laws limiting "strategic lawsuits against public participation." *See Carroll v. Trump*, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022). These laws aim "to deter actions filed to punish or harass a defendant for participating in public life." *Id.* New York is one of the many states to enact such a law, and it provides for mandatory fee-shifting in certain cases.

Specifically, N.Y. Civ. Rights Law § 70-a(1) provides:

A defendant in an action involving public petition and participation, as defined in paragraph (a) of subdivision one of section seventy-six-a of this article, may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that:

(a) costs and attorney's fees shall be recovered upon a demonstration, including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules, that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law[.]

N.Y. CPLR 3211(g), referenced in § 70-a(1)(a), provides:

(g) Stay of proceedings and standards for motions to dismiss in certain cases involving public petition and participation.

1. A motion to dismiss based on paragraph seven of subdivision (a) of this section, in which the moving party has demonstrated that the action, claim, cross claim or counterclaim subject to the motion is an action involving public petition and participation as defined in paragraph (a) of subdivision one of section seventy-six-a of the civil rights law, shall be granted unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law. The court shall grant preference in the hearing of such motion.

2. In making its determination on a motion to dismiss made pursuant to paragraph one of this subdivision, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the action or defense is based. No determination made by the court on a motion to dismiss brought under this section, nor the fact of that determination, shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.

3. All discovery, pending hearings, and motions in the action shall be stayed upon the filing of a motion made pursuant to this section. The stay shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and upon a showing by the nonmoving party, by affidavit or declaration under penalty of perjury that, for specified reasons, it cannot present facts essential to justify its opposition, may order that specified discovery be conducted notwithstanding this subdivision. Such discovery, if granted, shall be limited to the issues raised in the motion to dismiss.

CPLR 3211(a)(7), referenced in 3211(g)(1), is New York's corollary to Rule 12(b)(6), and it provides for dismissal of a complaint where "the pleading fails to state a cause of action."

In this case, defendants argue that under § 70-a, attorney's fees are mandatory where a claim lacks a "substantial basis," which they say is established *a fortiori* by a dismissal under Federal Rule 12(b)(6). However, New York's statutory scheme does not contemplate an award of attorney's fees on a Rule 12(b)(6) dismissal.

Section 70-a specifically references fee-shifting in the context of New York's specialized anti-SLAPP procedures. It first provides that a defendant "may maintain an action, claim, cross claim, or counterclaim" to recover attorney's fees. Next, the statute states that fees "shall be recovered upon a determination, *including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules*, that the action involving public petition and participation was commenced or continued without a substantial basis in fact or law." N.Y. Civ. Rights Law § 70-a(1)(a) (emphasis added).

Translating this language: a party can seek attorney's fees under § 70-a in different ways. It could, for instance, file an action or assert a counterclaim for such fees. But when addressing what happens on a motion to dismiss or motion for summary judgment on a defamation plaintiff's claims, the statute specifically references "an adjudication pursuant to" CPLR 3211(g), New York's specialized motion-to-dismiss statute for cases covered by the anti-SLAPP law, or CPLR 3212(h), its specialized summary-judgment statute.

Defendants did not invoke CPLR 3211(g) in this case.[1] Instead, on their motion to dismiss, they relied on the conventional standards governing Rule 12(b)(6) motions. *See* Dkt. 25 at 5. For

---

[1] CPLR 3211(g) is different from Rule 12(b)(6) in several ways. It provides for a burden-shifting procedure on any motion to dismiss for failure to state a claim. Once a defendant demonstrates that an action involves "public petition and participation," which is unchallenged here, the burden shifts to the plaintiff to show that the case "has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." N.Y. C.P.L.R. 3211(g)(1). This determination isn't made on the pleadings alone; the court "shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the action or defense is based," and "on noticed motion and upon a showing by the nonmoving party . . . that, for specified reasons, it cannot present facts essential to justify its opposition, [the court] may order that specified discovery be conducted notwithstanding this subdivision." N.Y. C.P.L.R. 3211(g)(2)–(3); *see also Reeves v. Assoc. Newspapers, Ltd.*, 218 N.Y.S.3d 19, 24 (1st Dep't 2024) (equating this procedure to "an accelerated summary judgment motion" with a "unique discovery provision, exclusive to CPLR 3211(g)," that is "tailored to aid a party [to] summon 'facts essential to justify its

this reason, defendants' motion must be denied. *See La Liberte v. Reid*, 966 F.3d 79, 88–89 (2d Cir. 2020) (no fee-shifting for Rule 12(b)(6) dismissal of SLAPP case where "[t]he [state law] does not purport to make attorney's fees available to parties who obtain dismissal by other means, such as under Federal Rule 12(b)(6)" (citation omitted)). Section 70-a specifically references CPLR 3211(g) without purporting to "make attorney's fees available to parties who obtain dismissal by other means." *See id.* (citation omitted).

In *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166 (S.D.N.Y. 2024), the court stated in a footnote that the use of "including" in § 70-a(1)(a) ("*including* an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules") indicates that CPLR 3211(g) is "merely one way the attorney's fees provision can be triggered." *Id.* at 189 n.23. That is of course true given that fees can be sought without a motion to dismiss coming into the picture, such as in a standalone action for fees or a counterclaim. But in terms of a motion to dismiss, CPLR 3211(g) is the only statute referenced.

The context of the amendment adding the clause referencing CPLR 3211(g) shows that it wasn't just laying out examples. Rather, the clause's purpose was to provide that § 70-a's fee-shifting remedy "included" dismissals under CPLR 3211(g) and CPLR 3212(h), not just adjudications made in the context of actions for fees or counterclaims. Prior to the amendment, some courts had read § 70-a as warranting fees only on an "action" or "claim" for fees, and not on a motion at all. *See 315 W. 103 Enters. LLC v. Robbins*, 95 N.Y.S.3d 800, 800 (1st Dep't 2019) ("Whereas '[a] defendant in an action involving public petition and participation . . . may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action' against him or her, contrary to defendant's contention, that provision, which 'is in derogation of the common law and must be strictly construed,' does not provide for such recovery by motion to dismiss." (quoting *Hariri v. Amper*, 854 N.Y.S.2d 126, 130 (1st Dep't 2008))). In *Isaly v. Garde*, 213 N.Y.S.3d 852, 861 (N.Y. Sup. Ct. 2024), the court observed that the CPLR 3211(g) amendment was "enacted in direct response" to decisions like *Robbins*. That is, the "including" clause clarified that the statute didn't just apply to actions and claims but also "included" dismissals using the procedures that the legislature had established to adjudicate SLAPP cases.

If the legislature wanted to further broaden the statute's reach to federal dismissals under Rule 12 (or Rule 56), it could and would have said so. To that end, when the CPLR 3211(g) language was added to the statute, the New York legislature was aware that SLAPP actions may proceed in both state and federal court, and that motions to dismiss would come up in both. The legislature decided not to refer to all dismissals of a complaint, or specifically to Rule 12 dismissals, but to solely refer to CPLR 3211(g). *Cf. La Liberte*, 966 F.3d at 89 n.6 ("The California Legislature presumably could have awarded attorneys' fees to the prevailing party in *any* defamation action, but it chose not to do so." (emphasis added)); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328,

---

opposition' to an anti-SLAPP action, claim, cross-claim or counterclaim . . . and thereby show a substantial basis for their claims").

1335 (D.C. Cir. 2015) (Kavanaugh, J.) ("Had the D.C. Council simply wanted to permit courts to award attorney's fees to prevailing defendants in these kinds of defamation cases, it easily could have done so.").

Indeed, the court in *Isaly* noted that it is precisely because of the legislature's awareness of the potential unavailability of New York's state-specific procedures in federal court (due to the *Erie* doctrine) that it allowed claims for attorney's fees to be brought in a separate action, where procedures like CPLR 3211(g) won't come into play. *See* 213 N.Y.S.3d at 862 ("That the Legislature established a separate cause of action for anti-SLAPP remedies merely reflects the common will of New York that anti-SLAPP remedies be available in federal court (where awarding anti-SLAPP remedies through procedural rules may not carry through diversity procedure) . . . ."). Given that background, the legislature's specific reference solely to CPLR 3211(g) dismissals, and not Rule 12, is telling.

And independent of all of that, as reflected in *Robbins*, New York courts have held that § 70-a is in derogation of the common law and must be narrowly construed. *Robbins*, 95 N.Y.S.3d at 800; *Hariri*, 854 N.Y.S.2d at 130; *Guerrero v. Carva*, 779 N.Y.S.2d 12, 21 (1st Dep't 2004); *Silvercorp Metals Inc. v. Anthion Mgmt. LLC*, 948 N.Y.S.2d 895, 900 (N.Y. Sup. Ct. 2012). In this context, there's good reason to exercise caution. Automatically shifting fees on a Rule 12(b)(6) dismissal creates anomalies between the treatment of § 70-a in state and federal court. While CPLR 3211(g) contemplates an "accelerated summary judgment" procedure where a defamation plaintiff may seek discovery, *Reeves v. Assoc. Newspapers, Ltd.*, 218 N.Y.S.3d 19, 24 (1st Dep't 2024), this procedure is unavailable under Rule 12(b)(6). Of course, it would be strange if in state court, a plaintiff facing a motion to dismiss can try to shore up their case through discovery, but in federal court, no discovery can be taken and any dismissal triggers mandatory fee-shifting. Separately, even *Bobulinski* understood that there might be defamation complaints that would survive under New York's failure-to-state-a-claim standard but fail Rule 12(b)(6) plausibility review. The court observed that "a federal court dismissing a New York SLAPP claim that would survive dismissal *but for* the plausibility requirement of *Twombly* and *Iqbal* . . . would have to separately analyze the 'substantial basis in fact and law' standard for attorney's fees and predict how the New York Court of Appeals would rule in the case." 758 F. Supp. 3d at 185 n.17. If the legislature wants courts to engage in such an analysis, it can say so. As it stands, § 70-a does not.

To the extent that *Bobulinski* pointed to the First Department's decision in *Reeves* as holding that any dismissal for failure to state a claim requires fee-shifting, that's not an accurate depiction of what *Reeves* held. True enough, *Reeves* made clear that a complaint dismissed for failure to state a claim will necessarily fail the "substantial basis" test. But the court in *Reeves* also acknowledged that before that determination is made, plaintiffs have the option of requesting tailored discovery under CPLR 3211(g). In *Reeves*, the plaintiffs "never sought to avail themselves of the evidence-gathering framework set out in CPLR 3211(g). Specifically, plaintiffs never requested any tailored discovery, pursuant to CPLR 3211(g)(3), to obtain facts which might be necessary." 218 N.Y.S.3d at 24–25; *id.* at 28 (Oing, J., concurring) (similarly noting that the "substantial basis" determination could be made without remand "because plaintiffs never

requested CPLR 3211(g)(3) discovery as part of their opposition to defendants' motion to dismiss. Nor did they argue on appeal that more discovery was needed for them to demonstrate a substantial basis for their pleaded claims"). But *Reeves* cast no doubt that those procedures are available to a plaintiff facing a bid for dismissal and fees at the pleadings stage, procedures that were unavailable to Wang in this case.

None of this means that in federal court there is no avenue to pursue attorney's fees under New York's anti-SLAPP law. *See Bobulinski*, 758 F. Supp. 3d at 186 (raising interest in avoiding situation where "defendants in state and federal court defending SLAPP suits will have very different outcomes"). If a case gets past the motion-to-dismiss stage, a defendant may assert a counterclaim. And if it doesn't, they can file a follow-on case seeking fees. That is exactly what happened in *Heilbut v. Cassava Sciences Inc.*, 778 F. Supp. 3d 551 (S.D.N.Y. 2025). In that case, after dismissal of a defamation case in federal court, the defendants filed a follow-on case seeking, among other things, attorney's fees under § 70-a, a claim the court allowed to proceed. *See id.* at 567–69.

In the context of a standalone claim like the one recognized in *Heilbut*, but unlike the present case, a defamation plaintiff facing a bid for fees will have a right to pursue discovery, something that a CPLR 3211(g) motion provides for, but Rule 12 does not. Of course, just as in state court, the chance of making an evidentiary showing that the "substantial basis" standard is satisfied, where a prior defamation complaint failed to do so, may be remote. But importantly, the defamation plaintiff's rights won't vary based on whether they happen to find themselves in a state or federal forum.

Here, defendants' sole argument is that the dismissal of the complaint in this case under Rule 12(b)(6) automatically requires fee-shifting. The answer is no.[2] For the reasons stated above, defendants' motion is denied.

---

[2] Because the Court denies defendants' motion on state-law grounds, it need not grapple with the thorny *Erie* questions concerning the application of New York's fee-shifting remedy in federal court, as to which courts in this district have come to different conclusions. *See, e.g.*, *Brady v. NYP Holdings Inc.*, 2022 WL 992631, at *11 (S.D.N.Y. Mar. 31, 2022) (§ 70-a conflicts with Rule 11); *Kesner v. Buhl*, 590 F. Supp. 3d 680, 700–01 (S.D.N.Y. 2022) (conflicts with Rule 12 and 56); *Carroll*, 590 F. Supp. 3d at 585 (same); *Nat'l Acad. Tel. Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430–32 (S.D.N.Y. 2021) (same). *But see Bobulinski*, 758 F. Supp. 3d at 182–88 (no *Erie* conflict).

**CONCLUSION**

For these reasons, Wang's motion for relief under Rules 59(e) and 60(a) and defendants' motion for attorney's fees are DENIED. The Clerk of Court is directed to terminate Dkts. 69 and 80.

SO ORDERED.

Dated: September 9, 2025
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge